Lindsey W. Cochran and Donna M. Cochran v. Commissioner. Cochran Co., Inc., a corporation v. Commissioner.
Cochran v. Commissioner
Docket Nos. 72898, 72899.
United States Tax Court
T.C. Memo 1959-207; 1959 Tax Ct. Memo LEXIS 43; 18 T.C.M. (CCH) 985; T.C.M. (RIA) 59207; October 29, 1959
*43 Paul E. Anderson, Esq., for the petitioners. Godfrey L. Munter, Jr., Esq., and Aaron S. Resnick, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax as follows: Year
Deficiency
Lindsey W. and Donna
M. Cochran
1953
$26,449.65
1954
7,945.27
1955
8,214.74
Cochran Co., Inc.
1953
7,358.91
1954
9,271.05
1955
9,261.15
The only issue for decision in the case of the individuals is whether or not the petitioners realized income in 1953 from the sale of a ranch property to a wholly owned corporation. The only issue in the case of the corporation is the basis for depreciation of the residence acquired by the corporation in the above-mentioned transaction. All issues in the cases of the individuals for 1954 and 1955 have been settled. Findings of Fact Lindsey W. and Donna M. Cochran, husband and wife, filed a joint return for 1953 with the district director of internal revenue at San Francisco, California. They used a cash and calendar year method of accounting for and reporting income. Lindsey came to California in 1926 as a representative of Robert *44 T. Cochran Co., commercial merchants and jobbers in New York City. He moved to Tracy, California, in 1936 when Robert T. Cochran Co. opened a branch there. Tracy is about 65 miles east of San Francisco and about 20 miles southwest of Stockton. Lindsey acquired by purchase in 1941 a ranch property, known as Windy Acres. It consisted of about 310 acres of land with improvements thereon. It is situated about 4 1/2 miles southeast of Tracy. The improvements include a residence. The house and other buildings on the property in 1941 were old and in poor condition. Lindsey tore some down, improved others and built some new buildings. He remodeled the dwelling sufficiently to make it livable and moved in with his family in 1942 but was limited in making improvements at that time by war conditions. The original cost of the land to Lindsey was about $100 an acre. It was then dry farm land. He dug three wells on the property which produced over 6,000 gallons of water per minute. He leveled the land for irrigation. His improvements materially increased the value of the property. He leased the land for farming purposes to a joint venture consisting of Robert T. Cochran Co. and a man named Ebell. *45 The irrigation system on Windy Acres is tied in with a similar system on an adjoining 600-acre tract which was also regularly leased by the joint venture. Lindsey formed Cochran Co., Inc., in 1947, purchased the business assets of Robert T. Cochran Co. pertaining to its Tracy operation and transferred those assets to Cochran Co., Inc., in exchange for its stock. He mortgaged the entire Windy Acres property in order to obtain funds with which to purchase the assets from Robert T. Cochran Co. Lindsey is president of Cochran Co., Inc. It has a business office in Tracy. A new joint venture consisting of Ebell and Cochran Co., Inc., has leased, since 1947, Windy Acres, exclusive of the residence, the 600 adjoining acres above mentioned and another nearby tract of about 600 acres, all of which it operates as a unit for farming purposes. It also operates an additional 2,500 acres, the location of which is not disclosed in the record. Ebell supervises the farming operations and Cochran Co., Inc., does the harvesting, packing, selling and distributing of the vegetables raised by the joint venture on its 4,000 acres. These products consist of 8 or 10 different types of crops alternated each *46 year for diversification and soil building purposes. The crops include tomatoes, peppers, celery, beans, carrots, asparagus and alfalfa. Lindsey makes from 80 to 85 per cent of the sales of those vegetables in a wide territory including most of the United States and Canada. The remaining sales are made through brokers such as Robert T. Cochran Co. The gross sales reported by Cochran Co., Inc., were $1,551,519.33 for 1953, $1,812,469.15 for 1954 and $1,977,787.90 for 1955. Windy Acres is headquarters for the 1,500-acre farming operation of the joint venture. All of the buildings on Windy Acres are situated almost in the center of the tract. The only means of reaching these buildings is an oiled gravel road extending about half a mile in a straight line through the property to a main highway. The buildings adjacent to the residence include a garage, two small residences, a main workshop and equipment and storage sheds. The foreman lives there. The repair work on tractors is done there. Fertilizer and spray materials are stored there. The buildings, exclusive of the residence, were built to take care of the over-all operations on the 1,500-acre tract. They would not be needed and they *47 would be impractical if the Windy Acres property was being farmed separately from the other acreage. The farming equipment was owned by the joint venture and Ebell paid one-half of the cost of the leases. Lindsey, his wife and their teen-age daughter have resided in the Windy Acres residence since 1942. He completed extensive improvements to the residence in April 1950 to make it more livable and to provide a much needed place to entertain business guests on behalf of Cochran Co., Inc. There was no suitable place for entertaining such persons in the neighborhood. Lindsey and Donna offered to sell the entire Windy Acres property to Cochran Co., Inc., for $171,194.06. That amount was the cost of the property to Lindsey, less depreciation, up to that time. The offer was promptly accepted and the property, including the land and all improvements thereon, was sold on or about February 27, 1953, to Cochran Co., Inc., at the price offered. The purchase price was paid as follows: Assumption of First Deed of Trust
$ 57,500.00
Cancellation of indebtedness of sellers
to buyers
88,481.31
Demand 5% promissory note of
buyers
25,212.75
$171,194.06
One of the purposes *48 of the sale was to cancel the indebtedness owed by Lindsey to the corporation. Another was to give the corporation more assets and a better financial position. Lindsey also felt that ownership of the residence by the corporation was partially justified by the substantial amount of entertaining which he did there on behalf of the corporation. It also gave the corporation additional income from rent of the newly acquired properties. Separation of the residential property and the remainder of Windy Acres for the purpose of sales would not have been practical or economically sound. The fair market value of the property as a whole was substantially greater than could have been obtained from separate sales of the residence and the remainder. The fair market value of Windy Acres as a whole was in excess of the sales price of $171,194.06. The Cochrans did not report any gain on their return for 1953 from the sale of Windy Acres. The Commissioner, in determining the deficiency for that year, added $38,955.75 to the reported income. He explained that this result was reached by allocating the purchase price between the personal residence and the remainder of the property in proportion to *49 what he stated was the fair market value of each. He thus computed a nondeductible loss of $77,911.49 on the residence and a long-term capital gain of $77,911.49 on the remaining part of the property. The Commissioner, in determining the deficiencies against the corporation disallowed a part of the deduction taken for depreciation in each year. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner, in determining the deficiency for 1953 against the Cochrans, allocated the purchase price between the personal residence and the remainder of the property in proportion to what he there stated was the fair market value of each. He thus computed a nondeductible loss of $77,911.49 on the residence and a long-term capital gain in an equal amount on the sale of the remaining part of the property. However, his enthusiasm for that determination had deteriorated by the time of the trial, as well it might. He then filed an answer in which he made allegations to support a greater tax liability on a different theory. The facts established in this case show that the Commissioner's determination in the case of the individual petitioners for *50 1953 is erroneous. The property sold consisted of the entire Windy Acres properties and it was sold for a single purchase price. There was but a single sale for a single price and not a separate sale of the residence and another separate sale of the remaining portions of the property. Cf. ; ; . The sale, of course, was by the two Cochrans to their wholly-owned corporation. Such a sale justifies careful scrutiny because it is not between persons having adverse interests. The parties here are agreed, however, that the Windy Acres property as a whole was worth much more than the price which the Cochrans received for it from their wholly-owned corporation. The Cochrans took no undue advantage of the corporation in this transaction. The single sale price was the same amount as the Cochrans' cost of the entire property, adjusted for depreciation. That cost was made up of separate amounts, but the separate items formed but one property for the purpose of the sale. The Internal Revenue Code provides that the gain from a sale is the excess of the amount realized *51 over the adjusted basis of the property sold. Here there was no excess, and consequently the Cochrans realized no gain from the transaction. Cf. . The above discussion also disposes of the Commissioner's alternative contention. He alleged in his amended answer that the corporation paid $112,761.43 for the residence which had a fair market value of not in excess of $50,000 and the difference between those two amounts, $62,761.43, represents the distribution of a dividend by the corporation to Lindsey. The Commissioner made claim in the amended answer for the resulting increase in the deficiency. This record shows that the Cochrans did not receive any separate amount for the residence but on the contrary sold land and all improvements as one package for one price. The Commissioner has the burden of proof to establish the facts on which he relies to support the contention made by him in his amended answer in the case of the individuals. Not only has he failed to show a separate sale of residential property but he has also failed to show that $112,761.43 of the total purchase price can fairly be allotted under any theory as the amount *52 received for the residential property. Also, he has failed to prove that the value of that property was not more than $50,000. The Commissioner has never supplied the record with an adequate definition of what he refers to as the residential property. The residential property obviously included a house, but in addition there would be ground. How much ground is not shown. Also, there would have to be some means of ingress and egress. No value for that has been shown. There were several buildings and a swimming pool. The evidence shows that a part of the money expended by Lindsey in improving the property was for landscaping, including many trees along the road leading to the buildings. The Commissioner has ignored these problems. Witnesses gave opinions as to the value of the residence, although it is not clear just what they took into consideration. If the Court were to make any finding from the record as a whole as to the separate value of the residence property, it would, contrary to the Commissioner's allegation, exceed $50,000. The only place that the figure of $112,761.43, alleged by the Commissioner in his amended answer, appears is in a stipulation filed, not in the case of *53 the individuals, but only in the case of the corporation. It is not at all clear just what that figure covers. It is opposite "Dwelling, etc." The testimony shows that there were at least two other dwellings "back of the garage" and they are not separately listed in the stipulation. The subject does not merit further discussion, but the fact is that the Commissioner has not demonstrated merit in the contention he makes in his amended answer. The Commissioner states in his brief that the only issue for decision in the case of "Cochran Co., Inc., is the proper basis for depreciation of the residence purchased from the sole stockholders of Cochran Co., Inc." Here the failure of the record to disclose the cost to Cochran Co., Inc., of the depreciable part of the so-called residential property or its fair market value works against the petitioner. Apparently the only figure in controversy is the amount to represent the basis for depreciation of the residential building in the hands of Cochran Co., Inc. There is no direct evidence as to that basis. The Commissioner, in determining the deficiencies, used $34,849.94 as the "Cost Subject to Depreciation" of the "residence." This appears in *54 the depreciation schedule attached to the notice of deficiency in the corporation's case. That was the exact portion of the sales price which he allocated to the entire residential property in determining the deficiency against the individuals for 1953, but in the depreciation schedule above mentioned he lists three additional items following "Rental property - residence." Apparently the amount of depreciation allowed for these other three items is not in dispute, but if it is, there is no evidence in the record on the subject. The record as a whole justifies the conclusion that the cost to Cochran Co., Inc., of the residence proper, subject to depreciation, is in excess of $34,849.94 and that the determination of some larger figure is appropriate. . The Court, of necessity, bearing most heavily upon the petitioner who has the burden of proof on this issue, but exercising its best judgment in the light of all the evidence in this case, none of which points to any specific figure for this purpose, concludes that a proper figure to be used by the corporate petitioner for the purpose of computing depreciation on the residence, meaning the *55 house proper, is $70,000. Decisions will be entered under Rule 50.